UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CARLTON T. GALLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 21-045-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| WILLIAM THOMPSON, JR., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Carlton Gallman instituted this civil rights action against multiple individuals and entities related to the Lee Adjustment Center ("LAC") under 42 U.S.C. § 1983. He contends that he was assaulted, mistreated, and threatened at the facility, in violation of his rights protected by the Eight Amendment to the United States Constitution. [Record No. 1] All defendants have been dismissed from the action except Defendant William Thompson Jr.

Thompson has now filed a motion for summary judgment, asserting that Gallman's Eighth Amendment claims are barred because he failed to exhaust his administrative remedies. [Record No. 73] Alternatively, he argues that Gallman cannot demonstrate that his Eighth Amendment rights have been violated. United States Magistrate Judge Edward B. Atkins submitted a report, recommending that the Court grant Thompson's motion for summary judgment. [Record No. 81]

This Court must make a *de novo* determination of those portions of the magistrate judge's recommendation to which objections are made, 28 U.S.C. § 636(b)(1)(C), but "[i]t does not appear that Congress intended to require district court review of a magistrate's factual

or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Gallman did not file objections to the magistrate judge's recommendation. However, after considering the entire record and the magistrate judge's recommendation, the Court agrees that Thompson's motion for summary judgment should be granted because Gallman failed to exhaust his administrative remedies.

**I.**

Gallman was previously incarcerated at the LAC. On December 22, 2020, Thompson delivered food to the dorm where Gallman was being held. Gallman attempted to pick up his food from the delivery station in the dorm. [Record No. 73-5, p. 2] However, Thompson observed Gallman pick up another inmate's lunch tray and advised Gallman that tray was not his. [*Id*.] According to Thompson, this led to Gallman slamming down the tray and cursing at Thompson. [*Id*.] Thompson purported responded, "why the hell would you do that," which was followed by Gallman allegedly threatened Thompson with physical violence. [*Id*.] Thompson then directed Gallman to return to his cell. [*Id*. at 3.] Gallman viewed the incident differently. He alleges that Thompson threw soup on the floor and made threatening remarks towards him. He also contends that he did not do anything to provoke Thompson. [Record No. 77, pp. 48-54]

Thompson later went to Gallman's cell to do a write-up of the incident and ask Gallman for his identification number. [Record No. 73-5] Thompson asserts that Gallman refused to provide this number. [*Id*.][1] And rather than provide the identification number, Thompson claims that Gallman reached to grab a padlock. [Record No. 73-5] A video of the incident

---

[1] Gallman concedes that Thompson asked him for his identification number two or three times. [Record No. 77, p. 71]

indicates Gallman gesturing at Thompson, walking back into his cell, reaching for something, and then advancing toward Thompson. [Video Ex. at :40-:44] Thompson claims that he felt threatened at this time. [Record No. 73-5] And while Gallman advanced in his direction, Thompson utilizes O/C spray. [Video Ex. at :45] Gallman then chases Thompson down the stairs. [Video Ex. at :50-1:03]

Gallman was taken to the medical unit to be evaluated following the above-described incident. Medical staff did not note any injuries but concluded that Gallman had been exposed to chemical spray. After the medical assessment, Gallman was placed in a restricted housing unit ("RHU") for one week. Case Manager Tenicia Hays visited Gallman while he was held at the RHU. [Record No. 73-2, p. 53] Gallman refused to participate in the review process and informed Hays that he was "good and needed nothing." [*Id*.] Gallman was also visited by Grievance Aide Marshall Brooks and Case Manager Barrett.

Gallman wrote and signed a grievance for the alleged December 22, 2020, incident on December 31, 2020. [Record No. 73-2, p. 6-7] In this grievance, he alleged he was assaulted, cursed, and threatened by Thompson. [*Id*. at 7.] He also alleged that Thompson sprayed him with pepper spray. [*Id*.] The grievance was rejected because he did not file it within five business days as required by LAC policy. [*Id*.]

Gallman later filed this action, asserting claims against CoreCivic, Inc., which owns the LAC, and multiple employees at the LAC for the events that occurred on December 22, 2020. However, the Court dismissed all claims and defendants with the exception of the Eighth Amendment claims asserted against Thompson.

Thompson has moved for summary judgment, asserting that Gallman failed to utilize the grievance procedure available at the correctional facility within the proper time period,

meaning he did not exhaust his administrative remedies. [Record No. 73-1] Thompson argues that Gallman had access to and the ability to file a grievance within the time required by the facility's rules but failed to do so. Alternatively, he contends that Gallman has not stated a viable Eighth Amendment claim because the brief use of O/C spray to maintain officer safety and restore discipline does not constitute an excessive use of force.

Magistrate Judge Atkins has recommended that summary judgment be granted in favor of Thompson. [Record No. 81] First, he concludes that Gallman failed to properly and timely exhaust administrative remedies available to him. [*Id*. at 10.] Notwithstanding this first conclusion, the magistrate judge proceeded to consider the merits of Thompson's motion for summary judgment. As he has explained, Thompson adequately demonstrated that there was a penological purpose to his use of O/C spray and Gallman did not sustain more than *de minimis* injuries. Finally, Magistrate Judge Atkins properly concluded that Gallman did not demonstrate that he suffered a sufficient injury to sustain an Eighth Amendment claim.

II.

Summary judgment is appropriate if there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). In essence, the Court asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The moving party carries an initial burden to produce evidence to present a prima facie case that he or she is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 317; *see also Angelo v. Kroger Co.*, No. 86-3912, 1987 U.S. App. LEXIS 11965, at *24 (6th Cir. Sept.

3, 1987) ("The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment.") (internal citations omitted)). Once this burden is met, "[the movant's] opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 984 (E.D. Ky. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 58.  *Pro se* filings are evaluated under a more lenient standard.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### III.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his or her administrative remedies before bringing suit regarding prison conditions.  42 U.S.C. § 1997(e); KRS § 454.415.  "A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution."  *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017).  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  A prisoner must comply "with an agency's deadlines and other critical procedural rules" to properly exhaust his administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  Exhaustion is mandatory and claims that have not been exhausted cannot be asserted before the Court.  *Jones*, 549 U.S. at 218; *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016).  But there are limited instances where exhaustion may be excused when the administrative procedures are rendered "unavailable" to an inmate.  *Doe v. Snyder*, 945 F.3d 951, 954 (6th Cir. 2019) (citing *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016)).

Here, the LAC policy requires that inmates file grievances within five business days after an alleged unfair or discriminatory incident. [Record No. 73-2, p. 27] "Business days" are defined as Monday through Friday, excluding holidays. [*Id*. at 20.] The LAC policy also allows inmates to receive help from a "a fellow inmate, staff member, attorney, or outside advocate" with the filing a grievance and a third party may file a grievance on behalf of the inmate. [*Id*. at 28.]

Gallman concedes that his grievance was filed outside the five-day window but asserts that the procedure was not "available" to him because he was housed within the RHU and did not have access to writing materials during the prescribed time period. [Record No. 77, p. 23] However, as the magistrate judge correctly notes, the record demonstrates that the administrative grievance procedure was available to Gallman within the time allotted by LAC's policy.

The evidence is undisputed that Gallman met with case managers who could have assisted with the grievance. Gallman testified that case workers visited the RHU almost every day (except weekends) while he was in the RHU and that inmates would advise they if they needed anything. [Record No. 77-1, pp. 30-31] Case Manager Hays visited Gallman in the RHU during the five-day period and could have assisted Gallman with the filing of a grievance. Hays stated in her affidavit that "one of the roles of a case manager [is] to provide assistance that is needed by an inmate, including providing grievance forms, paperwork and pencils . . . to complete that process." [Record No. 73-3, p. 2] Instead, Gallman told Hays that he was "good and needed nothing." [*Id*. at 53.] The RHU action log also noted that Gallman "refused to participate in the review process." [Record No. 73-2, p. 57] Additionally, there is footage

of Gallman being visited by Grievance Aide Brooks on December 29, 2020.[2] [Record No. 73-4, pp. 4-10] Gallman further testified that he was visited by Case Manager Barrett multiple times, and he explained that Barrett would provide him anything he requested. [Record No. 77-1, pp. 31-34] This evidence sufficiently demonstrates that the administrative process was available to Gallman during the five-day window.

In summary, the undersigned agrees with the magistrate judge that it is clear that Gallman had access to the grievance procedure but failed to timely file a grievance within the time provided. Accordingly, Thompson's motion will be granted based on Gallman's failure to exhaust his administrative remedies.[3] Accordingly, it is hereby

**ORDERED** as follows:

1. United States Magistrate Judge Atkins' Report and Recommendation [Record No. 81] is **ADOPTED** in part and **INCORPORATED** here by reference.

2. Defendant William Thompson Jr.'s motion for summary judgment [Record No. 73] is **GRANTED**.

3. Plaintiff Carlton Gallman's claims are **DISMISSED** with prejudice.

---

[2] Gallman provided an affidavit from Brooks stating that Brooks was not allowed to visit the RHU beyond the front door and inmates had to mail their grievances, if they could even get forms. [Record No. 78-1, p. 6] This assertion is directly refuted by photos in the record that show Brooks in the RHU and visiting Gallman in his cell on December 29, 2020. [Record No. 73-4, pp. 4-10]

[3] The magistrate judge also analyzed the merits of Gallman's Eighth Amendment claim. However, as noted, exhaustion is mandatory and claims that have not been exhausted are not properly before the Court. *Jones*, 549 U.S. at 218.

Dated: April 6, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky